**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM L. TAYLOR, JR.,**

       **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　**Case No. 6:11-cv-1756-Orl-22DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

       **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for Supplemental Security Income. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

## Procedural History

Plaintiff protectively filed an application for Supplemental Security Income on April 29, 2009, alleging that he became disabled on April 1, 2008 (R. 135-41).[1] The application was denied initially and on reconsideration (R. 71-75, 86-89), and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R.35-70). The ALJ issued an unfavorable decision on June 10, 2011 (R. 18-29). As the Appeals Council denied Plaintiff's request for review (R. 1-3), the ALJ's decision became the final decision of the Commissioner. Plaintiff filed his complaint in this action (Doc. No. 1) and the District Judge referred the matter to the undersigned. This case is now ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] Due to the eligibility requirements for SSI, the ALJ used the date of the application, and not the date of alleged onset, as the relevant date for evaluation of disability (R. 18). No objection has been raised to this finding.

## Nature of Claimed Disability

Plaintiff claims to be disabled due to multiple personality disorder, depression, anxiety, schizophrenia, and high blood pressure (R. 164, 213).

*Summary of Evidence*

Plaintiff was 31 years old on the date he filed his application (R. 45), with an eleventh grade education and past work experience as a gas station attendant and laborer-salvage, recycling (R. 46-47, 68, 165, 168).

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and, in the interests of privacy and brevity, is set forth in this opinion only as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff, and opinions from examining and non-examining consultants. By way of summary, the ALJ determined that Plaintiff had the severe impairment of schizophrenia (R. 20), and the record supports this uncontested finding. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appx. 1 (R. 20-21), and found that Plaintiff had the residual functional capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform simple, routine, repetitive tasks, is able to concentrate and persist for two hour segments, is limited to work that requires no more than occasional changes in the work setting and no more than occasional interaction with crowds, public, and coworkers. The claimant is unable to meet fast paced, high production demands and cannot meet "production pace."

(R. 22).

The ALJ then determined that Plaintiff could return to his past relevant work as a laborer/salvage (R. 27), and, alternatively, relied on the testimony of a Vocational Expert to conclude that there were other jobs in the national economy that Plaintiff could perform (R. 28). As such, the ALJ concluded

that Plaintiff was not under a disability, as defined in the Social Security Act, since the date the application was filed (R. 28-29).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises four objections to the Commissioner's decision: 1) the ALJ did not apply the correct legal standard to the medical opinions; 2) the ALJ did not include all impairments in the hypothetical question posed to the Vocational Expert; 3) the ALJ did not apply the correct legal

standards to several Global Assessment of Functioning (GAF) scores; and 4) the ALJ did not apply the correct legal standards to the alleged medication side effects. The Court treats each objection in turn.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Here, the ALJ determined the case at Step 4, finding Plaintiff could return to his past work and, alternatively, at Step 5, finding that other work exists that Plaintiff could perform. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*Opinion Evidence*

Plaintiff's first objection goes to whether the correct legal standard was applied to the evaluation of the opinion evidence. As noted by Plaintiff, an ALJ is required to state the weight given to medical opinions. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis,

and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Plaintiff claims that the ALJ did not apply this standard to the opinions of Dr. Thebaud, a treating psychiatrist, and Leigh Rosenberg, Psy.D., a non-examining state consultant. Specifically, Plaintiff asserts that the ALJ did not address the opinion that Plaintiff could not complete a normal workday or workweek without interruptions. Pl.'s Br. at 8-11.

According to Plaintiff, both the treating psychiatrist and the state consultant agree that Plaintiff "has a limitation in completing a normal workday or workweek without interruptions from psychologically based symptoms." Pl. Br. at 8-9. Although Plaintiff argues that the ALJ's decision "does not include any consideration of this evidence," the ALJ made explicit mention of it in summarizing the medical opinions (R. 26). Moreover, Plaintiff has selectively cited the limitation language (R. 674, 731). The complete limitation, appearing under the subheading "Sustained Concentration and Persistence," reads: "The ability to complete a normal work-day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 674, 731). A review of the ALJ's decision shows that the ALJ evaluated Plaintiff's ability to sustain concentration, persistence and pace; determining that Plaintiff was able to perform simple, routine, repetitive tasks, is able to *concentrate and persist* for two hour segments, is limited to work that requires no more than occasional changes in the work setting and no more than occasional interaction with crowds, public, and coworkers, is unable to meet *fast paced*, high production demands and cannot meet *"production pace."* (R. 22– emphasis added). Thus, a limitation on the ability to perform at a consistent pace without interruptions was explicitly noted (*see* R. 26) and the ALJ implicitly credited a portion of the

opinions by including a limitation with respect to concentration and pace in the RFC.[2] This satisfies *Winschel*.

Further, as acknowledged by Plaintiff, the ALJ rejected Dr. Thebaud's opinion (R. 25-26, 731). As the ALJ stated, in February 2011, Dr. Thebaud completed a medical source statement noting numerous markedly limited mental abilities (R. 25, 730-31). The ALJ rejected the "statement and opinion," finding:

> The medical source statement issued by Dr. Thebaud on February 8, 2011, is contradicted by several other portions of the record, including the claimant's own testimony about his activities of daily living, which include attending college in 2009 for seven hours per day while missing only two classes, the opinion of Dr. Salter and his treatment notes which reveal a history of substance abuse that Dr. Thebaud has failed to mention (or worse, is not aware of), plus other records which reveal very good functioning.[3] The undersigned finds good cause to reject the opinion of Dr. Thebaud, as it is not well supported or consistent with the record as a whole, and that the nature and extent of treatment provided by him would also indicate that lesser weight is appropriate under the regulations.

(R. 26).

The ALJ provided additional rationale for his findings, noting:

> In sum, the above residual functional capacity assessment is supported by the medical and other evidence of record which reveals that after the claimant was Baker Acted for domestic issues and found to have no mental health impairment in August of 2009, he was seen by Dr. Thebaud about a week later and began compensated drug studies for schizophrenia. After the claimant's compensated drug studies ended, Dr. Thebaud completed the rejected mental residual functional capacity assessment form on the same day the claimant signed up for a long term, uncompensated study, indicating that the claimant was suffering from chronic mental symptoms that prevented the claimant from working. However, the record reveals that in 2009, the claimant was able to attend college classes to work on his GED, with near perfect attendance while meeting his daily needs. The claimant does well when on medications, looks for jobs but has not been able to get one due to his prison record, not due to his disability. While the claimant testified that ACT was unsuccessful in helping him find a job, records reveal he has not remained in contact with them (Ex. 21E). The claimant has a wide variety of activities of daily living that are compatible with competitive work activity such as

---

[2] The Court notes that Plaintiff does not argue that the findings are not supported by substantial evidence, only that the appropriate legal standard was not applied.

[3] The ALJ noted in a footnote here that the date of the statement opinion is the same date that Plaintiff agreed to participate in an uncompensated research trial for this doctor (R. 26).

> housework, reading, shopping, and school activities. The claimant's assertions are far in excess of the medical evidence of record and other evidence. (R. 27).

All of the factual assertions are supported by record evidence.[4]

Similarly, the ALJ recognized that Dr. Rosenberg, a state agency consultant, opined that Plaintiff was moderately limited in his ability to complete a normal work day (R. 26, 674). The ALJ also cited and gave "some weight" to the Psychiatric Review Technique prepared by Dr. Rosenberg (R. 26, noting Exhibit 7F), in which Dr. Rosenberg concludes that "credible evidence supports moderate mental-social issues which may interfere with but would not preclude the [claimant] from working in a structured low social/public interaction work position[s]." (R. 671). The ALJ explicitly noted and credited Dr. Rosenberg's conclusion that, overall, Plaintiff could complete simple tasks on a regular basis from a mental standpoint (R. 26, 675). The opinion was weighed and considered, as required. No error is shown.

*Hypothetical Question*

Plaintiff next contends that the ALJ erred in presenting an incomplete hypothetical to the Vocational Expert, in that the ALJ did not include a limitation in meeting production pace. Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985); *see also Dial v. Commissioner of Social Security*, 403 Fed.Appx. 420 (11th Cir. 2010) (per curiam) (unpublished), cited by Plaintiff. An ALJ is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1161 (11th Cir. 2004).

---

[4]Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.) Here, the reasons cited by the ALJ are supported by substantial record evidence. As proper legal standards were applied and the record supports the findings, they should not be disturbed on review.

The ALJ asked:

> Q And let me have you assume that Claimant has a residual functional capacity to perform work without any exertional limits and – excuse me – mentally would be able to perform simple, routine, repetitive tasks, would be able to concentrate and persist for two hour segments, have occasional changes in the work setting, and occasional interaction with crowds and the public and coworkers, and would not be able to meet fast paced high production demand. Assuming those limitations, can he perform any of his past work as actually or as generally performed?

(R. 68). The Vocational Expert responded that such a person could perform the job of laborer, salvage (Plaintiff's past relevant work), as well as other specified jobs in the national economy (R. 69).

Plaintiff contends that the hypothetical is flawed in that the ALJ's finding that Plaintiff "is unable to meet fast paced high production demands and cannot meet production pace," (R. 22) includes two separate limitations, only one of which was included in the hypothetical. There is nothing to indicate that the ALJ was finding two separate limitations on the ability to meet production; "cannot meet production pace" is simply descriptive of the earlier acknowledged impaired ability to meet production demands.  Moreover, with respect to the Step 4 finding that Plaintiff could return to his past work, even if there were a separate limitation, Plaintiff has not carried his burden of showing that "production pace" is required for such a job.

*Global Assessment of Functioning (GAF) scores*

Plaintiff next asserts that the ALJ breached a duty to consider and weigh the various GAF scores[5] assigned to Plaintiff, noting that the ALJ mentioned only one higher score in his decision. Plaintiff claims that the scores are "opinions" which must be set forth and the weight given stated. The Court finds no error here.

The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity

---

[5] The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed.2000), includes the Global Assessment of Functioning ("GAF") Scales, used to score the severity of psychiatric illnesses.

requirements of the mental disorders listings." *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n. 5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000).)  This district has held that, generally speaking and absent unusual circumstances, an ALJ's failure to discuss a claimant's GAF score is not reversible error. *See, e.g., Baily v. Astrue*, No. 3:09–cv383–J–JRK, 2010 WL 3220302 at *8–9 (M.D.Fla. Aug.13, 2010);  *Bruner v. Commissioner of Social Sec.*, No. 8:08–cv–1744–T–27GJK, 2009 WL 3052291 at *2 (M.D.Fla. Sept.23, 2009); *Clarence Bros. v. Astrue,* No. 6:11-cv-830-ORL-MCR, 2012 WL 3243232, at *8 (M.D. Fla. Aug. 8, 2012).  While an ALJ's failure to evaluate a GAF score can constitute reversible error when the claimant received repeatedly low GAF scores that indicate severe impairments or when an ALJ misinterprets the score, *see, e.g., McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006), that is not the case here.

Plaintiff cites to three scores: a December 18, 2008 score of 40, rendered by a nurse practitioner; a December 17, 2008 score of 45, rendered by a therapist; and a GAF of 50, rendered August 18, 2009, by Dr. Thebaud (R. 657-8).  The first two scores were issued well prior to the relevant onset date of April 2009, by providers who are not recognized as acceptable medical sources. *See* 20 C.F.R. §§ 416.927(a)(2), 416.913(a).  As for the GAF of 50 rendered August 18, 2009, even if this were to be considered evidence of a severe impairment, there is no showing that this impairment remained severe and lasted the requisite period of time.  *See* 20 C.F.R. § 416.905(a) (disability defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be [ ] expected to last for a continuous period of not less than 12 months.").  Indeed, on August 11, 2009, just one week prior, Plaintiff was assessed by a clinical psychologist (an acceptable medical source) with a GAF of 68 (R. 650, 24).  Moreover, a month later, Plaintiff presented to Dr. Thebaud as "improved" and "doing well" on his medication (R. 653). Mental status was alert, oriented, with good remote and short term memory, and appropriate insight and judgment (*Id.*).  As noted above, Plaintiff was attending school during this time frame.

As set forth in the decision, the ALJ properly discussed the evidence regarding Plaintiff's alleged mental impairments (R. 22-27). As there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005), and substantial evidence otherwise supports the decision, any error in failing to evaluate the GAF score of 50 is harmless.

*Side Effects*

Plaintiff's last assertion is that the ALJ failed to properly evaluate the side effects Plaintiff claims to experience from his medications. According to Plaintiff, he takes "heavy duty medications for schizophrenia, and mentioned the side effects he experiences to doctors, the SSA, and the ALJ at hearing" (Pl. Brief at 17), but the ALJ failed to make a finding on the effect of medications on his ability to work, as required by *Cowart v. Schweiker,* 662 F. 2d 731 (11th Cir. 1981).

While it is generally true that an ALJ has a duty to elicit testimony and make findings regarding the side effects of medication on the claimant's ability to work, *Cowart, supra,* the Eleventh Circuit has also noted:

> Where a represented claimant raises a question as to the side effects of medications, but does not otherwise allege the side effects contribute to the alleged disability, we have determined the ALJ does not err in failing "to inquire further into possible side effects." *Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (11th Cir.1985). Further, if there is no evidence before the ALJ that a claimant is taking medication that cause side effects, the ALJ is not required to elicit testimony or make findings regarding the medications and their side effects. *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir.1992); *see also Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990) (holding that where the claimant did not complain about the side effects from her prescription medications, other than an isolated mention that they might be responsible for causing her headaches, and where the record did not disclose any concerns from her doctors about side effects, substantial evidence supported the determination that the side effects did not present a significant problem).

*Burgin v. Commissioner of Social Sec.*, 420 Fed.Appx. 901, 904 (11th Cir. 2011) (no error in failing to consider alleged side effects because no evidence represented claimant was experiencing side effects from his medications).

-10-

Here, Plaintiff, who was represented by counsel in the administrative proceedings, contends that the ALJ failed to make appropriate findings regarding Plaintiff's testimony that he is taking medication that makes him "tired" and "I can't perform like someone's best not on the medication." (R. 60-61).[6] The ALJ set forth this testimony in his decision (R. 23), but found Plaintiff's allegations of limitations beyond those found in the RFC to be not credible (R. 23-24). Plaintiff does not challenge this credibility determination, which is supported by substantial evidence. The medical record does not establish that Plaintiff had significant problems with side effects. While there are sporadic mentions of medication difficulties, they are followed by adjustments which appeared to ameliorate the complaint. *See* R. 653–"had difficulty adjusting to meds at first but reports is doing well on them now"; R. 655 – "feels the meds are making things worse," but denying side effects. Importantly, there are numerous reports where Plaintiff denied any side effects from his medications (R. 204, 214, 237, 655). Finally, as pointed out by the ALJ, the record reflects that Plaintiff was able to attend college classes to work on his GED, with near perfect attendance while meeting his daily needs, takes public transportation without difficulty, and has a wide variety of activities of daily living that are compatible with competitive work activity such as housework, reading, shopping, and school activities (R. 21, 23, 27). As the ALJ noted the allegations of side effects, found Plaintiff's assertions of limitations greater than the RFC to be not credible, and supported this finding with substantial evidence, no error is shown.

A final note is in order. Although it is evident that Plaintiff has challenges and difficulties which accompany his mental illness, the only issue before the Court is whether the decision by the Commissioner is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it must recommend affirming the decision.

---

[6]Plaintiff also completed a pain questionnaire in which he stated that he takes "some aspirin" for relief of pain and listed side effects of "drowsiness and dizziness, severe nausea" (R. 220).

## Conclusion

For the reasons set forth above, it is **respectfully recommended** that the decision be **AFFIRMED.** Should this recommendation be adopted, the Clerk should be directed to enter judgment accordingly, terminate all pending matters, and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 9, 2012.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy